IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-00195-JLK

**WAGNER INTERNATIONAL, LLC**

Plaintiff,

v.

**MANDAL ALT CO, LTD. and MANDAL INTERNATIONAL CO., LTD.,**

Defendants.

---

ORDER GRANTING MOTION TO DISMISS AND QUASH SERVICE

---

KANE, J.

This challenge to service and jurisdiction is before me on Defendants' combined Motion to Dismiss and Quash Service. Finding both that Plaintiff failed properly to serve and secure a valid waiver of service of summons and that the forum selection clause in the subject loan agreement is invalid, I grant the Motion.

I. Factual Background.

In 1999, defendants Mandal Alt Co., Ltd. ("Mandal Alt") and Mandal International Co., Ltd. ("Mandal International") each entered into a loan and security agreement with plaintiff, Wagner International, LLC ("Wagner International") for the purchase of two Caterpillar D9R tractors to be used by Mandal Alt in its mining business. The Mandal

entities are separate companies based in Mongolia, with Mandal International involved primarily in the dairy-products business and Mandal Alt operating several gold mines within that country. Neither Defendant conducts business within the State of Colorado or within the United States generally. Both operate exclusively in Mongolia. Wagner International is a Colorado limited liability company with its principal place of business in this state.

The loan agreements covered the financing and sale of two Caterpillar D9R tractors by Wagner Asia Equipment ("Wagner Asia"), a wholly-owned, Mongolian subsidiary of Wagner International, to the Defendants for use at Mandal Alt's gold mines. Wagner Asia provided the tractors while Wagner International provided the financing. As security for the loan, Wagner contends it received an interest in the tractors as well as an interest in Mandal Alt's Mongolian goldmine licenses. Several months after Wagner Asia delivered the tractors to Mandal Alt, Mandal Alt and Mandal International defaulted on the loan.

During the summer of 1999, representatives of each Defendant met with Wagner Asia General Director, John Karlsen, to discuss the loan payments. Besides representing Wagner Asia in the sale of the tractors to Mandal Alt and Mandal International, Karlsen apparently also procured and signed the financing agreements for Wagner International as its general agent. In September 1999, following this

meeting and assurances from Karlsen that the Mandal entities would receive credit upon the resale of the tractors, Mandal Alt and Mandal International returned the tractors to Wagner Asia.

On January 30, 2003, Wagner International filed the instant action asserting claims for breach of contract and unjust enrichment against Mandal Alt and Mandal International and seeking the return of the amounts loaned. The Mandal entities moved to dismiss and to quash service, arguing they were never properly served and that this Court therefore lacks personal jurisdiction over them. Wagner International contends Defendants agreed to waive service of process upon request, and contends a forum consent clause in the loan and security agreements precludes them from denying jurisdiction is proper in Colorado. Because I find plaintiff's attempt to obtain Defendants' waiver of service of process faulty and determine enforcement of the loan agreements' forum selection clauses under the circumstances of this case to be unreasonable, I grant Motion and dismiss the action.

II. Applicable Legal Standards.

Trial courts may decide motions to quash service and dismiss for lack of jurisdiction based on the pleadings and affidavits submitted by the parties without an evidentiary hearing. *E.g.*, *United States v. Ziegler Bolt and Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997) (affirming trial court's grant of defendant's motion to quash service without

evidentiary hearing); *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984) (recognizing court's ability to decide issue of lack of personal jurisdiction on the basis of affidavits). When considering a motion to quash service without an evidentiary hearing, a plaintiff need only make a *prima facie* case of proper service in order to survive the motion. *Ziegler Bolt and Parts Co.*, 111 F.3d at 881.

Plaintiff's burden of proving jurisdiction over the defendant is similarly light in the preliminary stages of litigation; thus when "there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). In this context, plaintiff's factual allegations are taken as true to the extent they are uncontroverted by the defendant's affidavits, and all factual disputes are resolved in the plaintiff's favor. *Id.* "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Id.* Under these standards, the question before me is whether Wagner International's allegations, as supported by its affidavits, are sufficient to make a *prima facie* showing of proper service and grounds for asserting personal jurisdiction.

## III. Discussion.

### ***Service of Process.***

Wagner International purports to have served the Mandal entities by hand-delivering a single Notice of Lawsuit and a Request for Waiver of Service of Summons to an appropriate representative of each in Mongolia. Mandal Alt and Mandal International deny service was effective as to either of them, and deny the individual who ultimately signed the Waiver acted with full knowledge of what she was signing or with authority to bind the companies even if she had. According to Defendants, the Notice and Request for Waiver of Service was addressed to a representative of Mandal International, not authorized to accept service for Mandal Alt, and was ultimately delivered to a third person who was not only not authorized to accept service for either company, but who did not even speak English. Defendants further contend delivery to this third person was accomplished by misrepresentation and misdeed, and was thoroughly improper.

Wagner International does not contest, or even acknowledge, the fact it addressed only one Notice and Request for Waiver form in an attempt to serve two Defendants with which it had contracted individually. Rather, Wagner International maintains that both Defendants' actual notice of the lawsuit—which resulted in part from the general managers of both Mandal Alt and Mandal International eventually receiving the Notice and Request for Waiver and in part from the previous proceedings before this Court—allowed the foreign corporations to retain competent representation and assert

all of their defenses. Wagner argues that this actual knowledge of the lawsuit and Defendants' subsequent ability to retain counsel is sufficient to meet the requirements of service of legal process. I disagree.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). These procedural requirements ensure that a defendant receives fair notice of the suit and has adequate opportunity to protect its legal interests. *Texas Western Financial v. Edwards*, 797 F.2d 902, 905 (10th Cir. 1986) ("Good notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them opportunity to present their objections). In federal actions, Rule 4 of the Federal Rules of Civil Procedure protects these interests and to promotes efficiency by prescribing with precision appropriate means and methods of service. In disputes brought against foreign corporations, Rule 4 provides alternative means for meeting service requirements. Paragraph 4(h)(2) allows a plaintiff to serve process on a foreign corporate defendant "not within any judicial district of the United States in any manner prescribed for individuals . . . except personal delivery . . . ." Alternatively, plaintiff may avoid serving process altogether by obtaining and filing a waiver of service from the foreign corporate defendant under paragraph 4(d)(2). In the instant case, Wagner

chose the latter.

The waiver provision of Rule 4(d) allows the plaintiff to avoid the costs of complying with service requirements while ensuring the notice and request forms employed are reasonably calculated to notify the defendant of the pending suit. To this end, paragraphs 4(d)(2)(A)-(G) prescribe the form and content of the notice and request used by plaintiffs to obtain defendants' waiver. Initially, the waiver provision of Rule 4 requires that the notice and request sent to corporate defendants "be in writing and . . . addressed directly to . . . an officer or managing or general agent (or other agent authorized by appointment or law to receive service of process)." Fed. R. Civ. P. 4(d)(2)(A). Similarly, the second requirement of the waiver provision specifies that the notice and request "shall be dispatched through first-class mail or other reliable means." Fed. R. Civ. P. 4(d)(2)(B). These two provisions ensure that the notice and request used to obtain the waiver of service from a corporate defendant will reach the appropriate corporate officer, and thus are reasonably calculated to apprise the defendant corporation of the pending action. 4A Wright & Miller, *Federal Practice and Procedure* § 1092.1 at 496 (3d ed. 2002).

Here, the undisputed facts establish that Wagner International failed to meet the requirements for obtaining waiver of service from Mandal Alt under Rule 4(d)(2). Wagner dispatched a single Notice and Request for Waiver of Service to two legally

distinct parties with which it had separate and individual contractual relationships. Wagner addressed this single Notice and Waiver request to Mandal International's general director, Dogsomjav Baldin-Ochir, assuming he would relay notice of the suit to the proper officer of Mandal Alt. Wagner did not take it upon itself to ensure the Notice and Request for Waiver was sent to the proper corporate agent, and it never was. The inadequacy of Wagner's attempt precludes any inference of notice or waiver, and Mandal Alt's Motion to Quash is granted.

Wagner International's attempt to serve and obtain an effective waiver of service from Mandal International is a closer call. The uncontested facts of this case are that Wagner's Notice and Request for Waiver of Service was hand-delivered by Wagner International employee Robert Barrows in Mongolia. Sosorbaramyn Namsraijav, a Mandal International accountant, received these documents and signed and returned the waiver of service during a meeting with Mr. Barrows. Mandal International contests the validity of this waiver because Namsraijav was neither an officer nor managing or general agent for Mandal International, nor was she otherwise authorized to receive service of process on the company's behalf. Wagner contends Namsraijav had implicit authority both to accept service of process and to execute the waiver under the particular facts of this case.

Specifically, Wagner contends Namsraijav agreed to meet with Barrows, in place of

Baldan-Ochir who was, at that time, abroad, knowing that the meeting concerned the delivery of documents regarding a legal claim against Mandal International by Wagner. Wagner contends Namsraijav's implied authority is further supported by the fact that she signed the waiver after reviewing it with an interpreter and an attorney, and that she executed the document as the general director of Mandal International. I conclude the allegations are insufficient to support an inference that Namsraijav was Mandal International's agent or that she had Mandal International's implied authority to accept service of legal process.

Wagner's general premise is correct that "[a]n agent's authority to accept service may be implied in fact," *United States v. Ziegler Bolt and Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997); *see also* 1 *Moore's Federal Practice - Civil* § 4.53(c) (2004). To warrant an inference of agency, however, a plaintiff must allege facts tending to demonstrate that the defendant did, in fact, implicitly authorize the purported agent to receive service of process on its behalf. *American Inst. of Certif'd Pub. Accountants v. Affinity Card*, 8 F. Supp. 2d 372, 376 (S.D.N.Y. 1998). Based upon Wagner's own affidavits, Namsraijav came to receive Wagner International's Notice and Request for Waiver from Barrows because Baldan-Ochir was out of town and not immediately available. There is no assertion that Baldan-Ochir was aware of the Notice or the request for immediate attention, or that he sent Namsraijav to accept or waive service

on his or the company's behalf. It is important to understand that Namsraijav's authority to receive or waive service cannot be inferred from her acceptance of the documents or her execution of the waiver. "An agent's authority to act cannot be established solely from the agent's actions; the authority must be established by an act of the principal." *Fed. Deposit Ins. Corp. V. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992). Without factual allegations tending to show *Mandal International* acted in ways that suggested Namsraijav was explicitly or implicitly authorized to accept or waive service of process on its behalf, it cannot be inferred from Namsraijav's actions that she was authorized *by* Mandal International. Considering all of the facts presented by Wagner in support of an effective waiver, I conclude it has failed to meet its burden of establishing a prima facie showing of sufficiency of service.

***Personal Jurisdiction*.**

Even assuming, for the sake of argument, that Namsraijav's waiver of service could be deemed effective, the question of whether this would be sufficient to confer jurisdiction over either or both Defendants to this action remains. Wagner relies on the parties' respective Loan and Security Agreements to argue both Defendants agreed to accept, "generally and unconditionally," the nonexclusive jurisdiction of the courts of

this State in legal proceedings brought by any of them against the other.[1] Defendants assert the clause is unenforceable because it is the result of overreaching by Wagner and because enforcement of the clause would cause such great inconvenience as effectively to deprive Mandal Alt and Mandal International of any meaningful rights for redress.

Forum selection clauses have been held valid in certain contexts by both the Supreme Court and the Tenth Circuit Court of Appeals. *E.g. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953 (10th Cir. 1992). In the leading admiralty case of *M/S Bremen*, the United States Supreme Court held that forum selection clauses are *prima facie* valid and should be enforced, unless it can be shown that "enforcement would be unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching." 407 U.S. at 15. This doctrine was affirmed and refined in *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991), where the Court emphasized the reasonableness of such clauses must be decided in view of the business context in which the contract appears. 499 U.S. at 631-

---

[1] Specifically, ¶ 7.2 of each of the two Loan and Security Agreements reads:

**Judicial Proceedings.** Any judicial proceeding brought against Borrower with respect to this Agreement may be brought, at the election of Lender, in any court of competent jurisdiction located in the State of Colorado, USA, and, by execution and delivery of this Agreement, Borrower accepts, generally and unconditionally, the nonexclusive jurisdiction of such courts, and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement or any document hereby contemplated. Any judicial proceeding by the Borrower against the Lender involving, directly or indirectly, any matter in any way arising out of, related to, or connected with this Agreement or any document hereby contemplated shall be brought only in the State of Colorado, USA.

32. The Tenth Circuit has applied *M/S Bremen* and *Carnival Cruise Lines* in non-admiralty diversity cases to state that the nature of the contract, the nationality of the parties, and the location of the activities giving rise to the claim are critical elements to consider in deciding the reasonableness of enforcing forum selection clauses. *Riley*, 969 F.2d at 956.

In *M/S Bremen*, Zapata, an American corporation, contracted with a German corporation to have a drilling rig towed from Louisiana to a point in the Adriatic Sea. The contract between the parties contained a forum selection clause that required any disputes arising from the towing of the rig to be brought before the High Court of Justice in London. Following damage to the rig caused from a storm at sea, Zapata brought suit against the German corporation in the United States District Court at Tampa, Florida despite the contractual agreement.

In reviewing the forum selection clause in the contract, several factors led the Court to hold that it was enforceable and precluded the suit being brought in Florida. Primary among these factors was the "far from routine" nature of the international contract and the "uncertainty and great inconvenience" parties in such transactions face when related claims can be brought in any number of jurisdictions. 407 U.S. at 13. The Court recognized "[t] he elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade,

commerce, and contracting." *Id.* at 13-14. The court also noted the sophistication of the parties involved and the process by which the parties came to agree upon the terms of the contract stating, "this was not simply a form contract with boilerplate language that Zapata had no power to alter." *Id.* at 12-13 n. 14. Finally, the Court noted there were no allegations of fraud or undue bargaining power involved in the inclusion of the forum selection clause. Based on these factors the Court found:

> There is strong evidence that the forum clause was a vital part of the agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations. Under these circumstances, . . . [t]he force of an agreement for litigation in this country, freely entered into between two competent parties seems to . . . be very powerful.

*Id.* at 14 (internal quotes omitted). Thus, the Court generalized that "international agreements, unaffected by fraud, undue influence, or overweening bargaining power, . . should be given full effect." *Id.* at 12-13.

The *M/S Bremen* Court observed, however, that in some cases "the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause." *Id.* at 17. Particularly where the clause establishes a remote forum for resolution of conflicts, "the party claiming [unfairness] should bear a heavy burden of proof." *Id.* Accordingly, the Court

in *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991) refined its position in cases involving non-negotiated forum selection clauses.

In *Carnival Cruise Lines*., a passenger on a cruise ship was injured while the ship was in international waters. The passenger brought suit against the cruise line in the U.S. District Court for the Western District of Washington notwithstanding a forum selection clause in the line's form ticket contract requiring all litigation related to the cruise to be brought in Florida. The Court first addressed the reasonableness of the clause by noting that although the parties did not negotiate the forum selection agreement, lack of bargaining was routine and ordinary for this type of contract entered into between the cruise line and its passengers. *Id*. at 593. The Court emphasized "that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness," *id.* at 595, highlighting the notion that such terms might be used as a means of discouraging parties from pursuing legitimate claims. In that case, however, no bad faith motive for including the forum selection clause was found, and the Court found in favor of its enforcement.

The Court's inquiry into the cruise line's motivation in *Carnival* is instructive in this case. First, the Court determined the cruise line's principal place of business was in Florida with many of its cruises departing and returning to Florida ports. *Id.* at 595. Second, the Court noted there was no evidence of fraud or overreaching in the

formation of the contract. *Id.* Third, all parties had notice of the forum provision. *Id.* Having found no bad faith, the Court added that only a showing of inconvenience so serious as to foreclose a remedy would be sufficient to defeat an otherwise enforceable forum selection clause. Because this "heavy burden" of proof was not supported by a finding of physical and financial impediments on the party contesting the forum provision, the Court held that it could not set aside the clause on these grounds. *Id.*

In *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953 (10th Cir. 1992), the Tenth Circuit reiterated the elements from *Carnival Cruise Lines* in considering a forum selection clause in a contract between an American agent and a British underwriting group. The forum selection provision limited jurisdiction over all disputes arising from the contract to the courts of England. The court articulated three reasons for upholding the forum selection provision. First, it noted the parties' undertaking was "truly international in character" in that it reflected numerous contacts with the foreign forum. *Id.* at 957. Second, all parties to the contract, except the American agent and one of the banks involved, were British, and third, virtually all the activities giving rise to the claims in the dispute occurred in England. 969 F.2d at 956.

Based on this analysis, *Riley* reiterates the holding of the Supreme Court in *M/S Bremen* that forum selection clauses in the context of international contracts are enforceable based on the nature of the underlying agreement. Because international

contracts are often complex agreements between sophisticated parties, a provision that pre-establishes the forum in which to resolve disputes prevents the chilling affect that uncertain jurisdiction could have on international business transactions. In this context the parties' agreement to submit themselves to the jurisdiction of the selected forum as articulated in the forum provision is based on the nature of the contact with the selected jurisdiction, as in *Riley*, or in their negotiation and acceptance of the provision, as in *M/S Bremen*.

Based on the uncontested facts in the instant case, I find the forum selection provision in the parties' Loan and Security Agreements distinguishable from the clauses deemed enforceable above. Unlike the contractual relationships in *M/S Bremen* and *Riley*, the relationships between Wagner International and the Mandal entities were not truly international and the clause was not bargained for in any sense of that term. The inclusion of the clause in a relationship that was going to take place exclusively in Mongolia over disputes that would only arise in Mongolia suggests overreaching on the part of Wagner International in a manner that distinguishes this case from *Carnival Cruise Lines* and the Supreme Court's findings of no bad faith or overreaching there. Finally, the terms of the forum provision clause, which would require the Mandal Entities not only to submit to suit in Colorado but also to sue in Colorado should their rights under the contract have been impinged, would, and may

even have been intended to, dissuade them from ever pursuing any claims against Wagner or defendant against claims Wagner might bring against them. Under these circumstances, I cannot enforce the forum selection clause at ¶ 7.2 of the financing Agreements.

Specifically, I note that all events surrounding the formation and execution of this contract occurred in Mongolia. The sale of the tractors, which Wagner International's loan and security agreements financed, was a business transaction among all Mongolian companies—including Wagner International's Mongolian subsidiary. The majority of individuals involved in this dispute live and work in Mongolia and speak only Mongolian. In this context, the forum selection clause included in the loan and security agreements does not resolve uncertainty regarding where the parties could maintain a suit arising from the contract, rather, it merely works to the advantage of Wagner by allowing it to bring claims in either Mongolia or Colorado and by restricting Mandal Alt and Mandal International to litigating any claims they might have in Colorado.

While not necessary to any determination regarding service or jurisdiction at this stage of the proceedings, I noted in my review of the record that the translation of the Loan and Security Agreement provided by Wagner to the Defendants may not have been sufficient to allow either a complete and accurate understanding of the terms of

the contract, specifically including the forum selection clause. The numbering of the two "translations" is different, confounding one's ability to understand the purpose and content of each accurately. Even without the benefit of being able to read both languages, moreover, certain discrepancies between the two documents are apparent.

Most apparent is a missing section in the Mongolian translation. Based upon a rough comparison of the two documents, section 5 ("Use of Collateral") is entirely non-existent in the Mongolian version. Thus, Wagner International provided the representatives of Mandal Alt and Mandal International with a Mongolian version of the contract that was not a true and complete translation of the agreement as it is in English. Another item of uncertainty in the provided translation is an apparent reference to the United Nations Commission on Trade Law (UNCITRAL) in the Mongolian version of the forum selection clause. The English version makes no mention of UNCITRAL and the acronym appears nowhere in that version's consent to jurisdiction clause. While it is impossible for a reader not literate in Mongolian to know the significance of this reference to the international dispute resolution body, the appearance of the acronym in one translation but not the other is concerning in that it supports an inference that the two versions of the loan and security agreements are sufficiently different to have prevented an accurate understanding of the forum selection clause by the Defendants.

Finally, the enforcement of the forum selection clause in this case would likely deprive Mandal Alt and Mandal International of their day in court. As stated above, all parties involved in this contract reside and conduct business in Mongolia. This means that Defendants' witnesses and records, and presumably many of Wagner's as well, reside in Mongolia and use exclusively that language. The logistical requirements and expenses of translating all the required documents and transporting necessary witnesses to Colorado in order for Mandal Alt and Mandal International to defend against Wagner International's claims and raise any counterclaims would be essentially prohibitive. This obvious disadvantage, when accompanied with the above considerations regarding the validity of the forum provision, supports the Defendants' contention that enforcement of the non-exclusive consent to jurisdiction clause would be unreasonable.

## IV. Conclusion.

Based on the foregoing, the Mandal Defendants' Motion to Dismiss and Quash Service is GRANTED as to both entities based upon Wagner International's material failure to serve and/or obtain a valid waiver of service of summons from either. Even assuming the waiver executed by Ms. Namsraijav were valid, the Motion of Mandal International to Dismiss would be granted based on the unenforceability of the permissive forum selection clause contained within the parties' Loan and Security

Agreement and related promissory note instruments. The case is DISMISSED.

July 8, 2005

**s/JOHN L. KANE**

SENIOR U. S. DISTRICT COURT JUDGE